UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAKIWI WILLIAMS,

        **Plaintiff,**

v.                                      **Case No. 8:12-cv-660-T-23TBM**

CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,[1]

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

      Plaintiff was forty-four (44) years of age at the time of her administrative hearing. She stands 5'5" tall and weighed 138 pounds. Plaintiff has at least a seventh grade education. Plaintiff reported past relevant work as a sandwich maker at Checkers, Burger King and Arby's. Plaintiff applied for disability benefits and Supplemental Security Income in

---

      [1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

December 2008, alleging disability as of January 1, 2007, by reason of depression and "sickle cell traits."  Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by a non-attorney representative and testified on her own behalf.  Additionally, a vocational expert was called by the ALJ**.**  In essence, Plaintiff testified that she is unable to work because she has a lot of anxiety and hears voices all the time.  Plaintiff worked at Checkers for five years, but started having anxiety attacks and would talk to the customers "badly."  She also worked at Burger King and Arby's doing similar work.  She started medication two years ago, but has not tried working since she's been on the medication.

She tries to do work around the house such as cooking, but will burn the food because she is not paying attention.  She has tried to clean her house, but the friend that she lives with tells her that she's not doing a good job.  She tries to wash the dishes every night, but is also told that she does not do a good job.  Her friend also says that she doesn't maintain herself, such as comb her hair, take a bath and brush her teeth like she is supposed to.  She brushes her teeth about once a week and takes a bath about twice a week.  Plaintiff could not provide a reason for why she was not maintaining her personal hygiene more.  In the mornings and afternoons, she usually goes outside and does her word search puzzle book for a couple of hours.  It takes her about an hour to complete one word search.  She watches some television, but the noise aggravates her.  She mostly stays to herself; she does not visit family.

Her friend takes her to go see Dr. Gleason at Suncoast Center for Community Mental Health, Inc. She usually sees Dr. Gleason every other month since she was put on the new medicine. At the hearing, she stated that she last saw Dr. Gleason last month when he put her on some medication. It has helped her a bit. He has her on three different medications, but she still suffers from anxiety often, which occurs about twice a week. When she feels anxious, it feels like she's shaking. She has a lot of no shows for therapy at Suncoast because she does not have transportation and lives far away, and her friend will not take her. She was unable to recall the last time she attended therapy.

Plaintiff's lower back also bothers her. She has been having a lot of pain and it is hard for her to stand for a long time. She has no insurance. She did go to the Pinellas County Health Department where they gave her pain medicine. From the date of the hearing, she last went there about four months ago. When she tries to lift something too heavy, her lower back bothers her. Her left knee also hurts if she stands for about an hour. She still has a wire in her mouth.

Plaintiff moved out of her mother's house last year to go live with her friend, Theresa Clark. She now lives with her other friend, Lisa, whom she moved in with in October 2009, because she and Theresa had a falling out. Theresa told her that she was "fussing and going [on] rages and stuff too much." Plaintiff gets in rages when she hears voices and becomes mad and angry. It's hard for Plaintiff to maintain friendships. The rages and problems with friends started about one to two years ago. Sometimes Plaintiff forgets to take her medication and her friend has to remind her. The most recent medication has helped her hear the voices

3

less.  She used to hear the voices every night; now, she hears them every other night.  Every

other week she experiences rages, which are brought on by the voices and her anxiety.  She

will throw things and curse a lot, and then fight with her friend.  Plaintiff cannot read very

well.

Plaintiff sometimes has suicidal thoughts.  She has acted on it a couple of times and

was put in the Personal Enrichment Mental Health Services (PEMHS) program before.

Plaintiff believes that she is able to handle her own money.  Her friend takes her to the grocery

store and helps her buy the things that she needs.  She receives $200 in food stamps a month.

Plaintiff has previously been in jail for fighting with the police.  When that happened,

she was not on medication.  (R. 40-64).

The ALJ next took testimony from Ms. Anita Rothard, a vocational expert (VE).  On

a hypothetical assuming a person that could perform the exertion demands of light work with

frequent abilities of climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping,

kneeling, crouching and crawling; ability to understand and recall simple, but not complex

instructions; can follow and execute simple, but not complex directions; can persist at simple

and routine tasks for a regular work day at an appropriate pace and can sustain this level over

weeks and months; can only have occasional interaction with the general public and only brief

and superficial interaction with peers, the VE opined that claimant's ability to return to her

past job as a sandwich maker would depend on the amount of required public interaction.  She

would be able to return to the type work that she did at Arby's because she worked in the

back.  With the added limitation that the individual could not perform work that was

4

considered fast paced, the VE opined that such person would no longer be able to work as a

sandwich maker.  As for other work, the VE opined that such an individual would be able to

work as a fast food worker, specifically working at the drive-thru window, as a bagger, and as

a seedling sorter.  On an additional question by the claimant's representative, assuming a

hypothetical of the individual having a limitation of only being able to function twenty-five

percent of the time following instructions and understanding and remembering simple written

tasks, the VE opined that such an individual would not be capable of doing any job.  (R. 64-

71).

Also before the ALJ were medical records outlining the Plaintiff's medical history.

These matters are addressed herein as necessary.

By her decision of October 7, 2010, the ALJ determined that while Plaintiff has

severe impairments related to major depressive disorder with psychotic features, borderline

personality disorder traits, below average intellectual functioning, and chronic bilateral knee

arthralgia, she nonetheless had the residual functional capacity to perform less than the full

range of light exertional work.  Upon this finding, the ALJ concluded that Plaintiff could

perform jobs available to her in the local and national economy.  Upon this conclusion, the

Plaintiff was determined to be not disabled.  (R. 15-28).  The Appeals Council denied

Plaintiff's request for review, and the ALJ's decision became the final decision of the

Commissioner.

### B.

Entitlement to Social Security disability benefits and Supplemental Security Income

payments requires the claimant establish that he or she is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

. . . has lasted or can be expected to last for a continuous period of not less than 12 months. . .

." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act,

is one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at

§ 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards. *See id.*

at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th

Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and

demonstrate that he has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions. *Moore*

*v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

The Plaintiff raises one claim on this appeal. Plaintiff argues that the ALJ should have given the opinion of Dr. Sorensen great weight, and thus, Plaintiff should have been found disabled. By her argument, there was no substantial evidence to support the finding that the doctor's opinion should be given little weight. Moreover, the reasons given by the ALJ for discounting the opinion are unsupported. Contrary to the ALJ's consideration, Plaintiff has been consistent in claiming auditory hallucinations that are of a command nature and only once claimed visual hallucination. While the ALJ could reject the doctor's opinion on disability, the doctor also found functional limitations, which would render Plaintiff disabled, and the ALJ gave no basis for rejecting them. Furthermore, it was not a proper basis to reject the doctor's opinion that he appeared to accept Plaintiff's subjective complaints at face value, since such subjective complaints are properly considered in making such evaluations and objective proof or testing of symptoms is not required.[2] (Doc. 16 at 11-15).

---

[2]Plaintiff also appears to configure this as a "pain standard" argument and urges that the evidence supports an underlying mental health condition that can reasonably be expected to give rise to the claimed symptoms. Thus, she argues that it is unreasonable to conclude that she does not satisfy the pain standard. Further the lack of any objective testing for

In response, the Commissioner argues that the ALJ did not err in discounting Dr. Sorensen's opinions and while she may disagree with the opinion, she has failed to show that the ALJ did not follow applicable standards or that the decision to discount the opinions is not supported by substantial evidence.  First, the ALJ was not required to give Dr. Sorensen's disability opinion controlling weight as such opinions are reserved to the Commissioner. Moreover, Dr. Sorensen's opinion that Plaintiff was unable to function 75% or more of the time in most areas of function was inconsistent with the evidence of record.  In particular, Dr. Sorensen's opinions were inconsistent with those of Dr. Trimmer, another examining psychologist and Dr. Gleason, a treating physician.  Nor was it an error for the ALJ to comment that Dr. Sorensen appeared to take Plaintiff's subjective allegations at face value, since such does appear to be the case.  While agreeing that Dr. Sorensen was not required to perform objective testing, the Commissioner urges that the lack of medical support for an opinion is an appropriate consideration.  Plaintiff fails to demonstrate that Dr. Sorensen's opinion was entitled to greater weight than that of Dr. Trimmer, nor does she demonstrate that the ALJ has not provided adequate reasons for discounting Dr. Sorensen's opinion.[3]  (Doc. 19 at 3-13).

Upon consideration of the decision, in light of the whole of the record, I think the Court has no choice but to affirm the decision.  Here, the ALJ was presented with claims of

malingering is not a good reason for discounting the symptoms.

[3]Insofar as Plaintiff couches this as a "pain standard" issue, the Commissioner argues that the decision reflects that the ALJ applied the standard and made credibility findings thereunder, which are supported by substantial evidence.  Plaintiff does not make any showing that the ALJ's reasons for concluding that Plaintiff overstated her complaints are inadequate or unsupported by substantial evidence.

extreme limitations and a mixed-bag of treatment notes, which included the contrasting opinions of two examining doctors and mental RFC assessments from two nonexamining doctors.  My review reveals that the reports from Suncoast Center for Community Mental Health, and those from Plaintiff's treating psychiatrist there, Dr. Joel Gleason, M.D., do not compel the conclusion that Plaintiff suffered disabling mental limitations to the extent she complained, and indeed suggest that she was not as impaired as complained of at the hearing, especially when she remained compliant and used her medicine as directed.  *See* (R. 393-410). While Dr. Sorensen gave his opinion on a single examination that Plaintiff was disabled, Dr. Trimmer made findings on her single examination that such was not the case.  *Compare* (R. 333-38) *with* (R. 285-88).  Both state agency nonexamining psychologists found Plaintiff mildly to moderately impaired, but nonetheless capable of work.  *See* (R. 310-13, 351-54).  As set forth above, it is the ALJ's duty to evaluate and weigh the evidence and resolve any differences.  By my consideration, the Court cannot alter the conclusion of this ALJ without wholly substituting its judgment for that of hers, in circumstances where there is substantial evidence to support the ALJ's decision.  Thus, I decline to do so.

The regulations prescribe that the ALJ looks at several factors in deciding the weight to be given to a doctor's opinions.  Moreover, when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In the absence of treating doctors' opinions or where such are discounted and the reports of

other doctors are at issue, the regulations prescribe that the ALJ considers factors such as the length of the treatment relationship, the speciality of the doctor, the frequency of examination, the nature and extent of the treatment relationship, the medical support offered for the conclusions, the consistency of the opinion with other evidence, and any other facts pertinent to the claim. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). While such are appropriately considered, the opinions of examining doctors are not entitled to more weight where they have only examined the claimant once. *Gainous v. Astrue*, 402 F. App'x 472, 474 n.2 (11th Cir. 2010) (quoting *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)).

The regulations also prescribe that a doctor's opinions that a claimant is "unable to work" or is "disabled," are not "medical opinions," as defined by the regulations, but are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the record contains such an opinion, the ALJ must evaluate all the evidence to determine the extent that it is supportable by the record, but such opinions are never entitled to controlling weight or special significance. *See* Social Security Ruling 96-5p, 1996 WL 374183, at *1-2 (S.S.A.).

Upon my review, the ALJ has fairly considered the medical evidence and opinions consistent with these standards. Indeed, relatively speaking, this ALJ rather assiduously discussed the mental health evidence. Dr. Sorensen's opinions were confronted head-on and discounted for several reasons. (R. 22). While Plaintiff may disagree with those reasons, I find that Plaintiff's claims regarding hallucinations were not entirely consistent. Further, the doctor's opinion on disability is not controlling since he only saw Plaintiff once. Moreover, the record supports that this doctor did little beyond interviewing Plaintiff, before deciding she

10

was extremely limited functionally and incapable of work.  While objective testing is not required, the lack of such supporting materials is not inappropriate for consideration, especially where there is record evidence of a finding of malingering in connection with her physical condition.  (R. 19).  Here, the ALJ opted to rely upon the contrary opinions of Dr. Trimmer and treatment notes from Dr. Gleason over that of Dr. Sorensen.  Plaintiff fails to demonstrate that the ALJ committed reversible error in doing so.

It is entirely unclear that Plaintiff seeks to raise an issue under this Circuit's "pain standard."[4]  If she does, for similar reasons, I find no error requiring remand.  The decision reflects that the ALJ applied the applicable regulatory standard.  Proper application of that standard satisfies this Circuit's "pain standard." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).  Furthermore, the ALJ credited Plaintiff with a severe mental condition, which affected her capacity for work, but not to the extent she claimed.  In discounting her subjective complaints, the ALJ cited the medical record, as well as the non-medical record.  (R. 23-26).  Plaintiff does not challenge the various findings by the ALJ, except to again urge that the lack of objective testing for malingering is not a good basis to discount her credibility.  Even if such testing is not required, in this case, the record evidence of a finding of malingering was just one of many considerations by this ALJ, leading to the conclusion that

---

[4]In this Circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).

Plaintiff was not fully credible about her symptoms.  Again, I conclude that Plaintiff fails to

demonstrate error requiring remand.

D.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence, and I recommend that it be affirmed. I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to

close the file.

Respectfully submitted this
26th day of August 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a

district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
United States District Judge
Counsel of Record

12